# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**DARRIUS MONROE,**
      **Plaintiff,**

    v.                                                   Case No. 20-C-229

**DR. CYNTHIA KOREN and**
**DR. MARK ROBERT SCHICK,**
      **Defendants.**

## DECISION AND ORDER

*Pro se* plaintiff Darrius Monroe, who is confined at the Green Bay Correctional Institution ("Green Bay"), filed this civil rights case alleging that the defendants violated his constitutional rights. The plaintiff is proceeding on an Eighth Amendment claim against Dr. Cynthia Koren and Dr. Mark Robert Schick based on his allegations that their treatment decisions after the plaintiff injured his Achilles tendon playing basketball were so inadequate given the plaintiff's injury that no minimally competent profession would have responded that way under the circumstances. ECF No. 10 at 16. Before me now are the defendants' motions for summary judgment in which they contend that the plaintiff failed to exhaust his administrative remedies.[1]

### I. FACTUAL BACKGROUND

**A. Plaintiff's Claim Against Dr. Koren and Dr. Schick**

In his complaint, the plaintiff alleges that on May 30, 2018, he was playing basketball when he felt a pop in his left Achilles tendon, followed by intense pain. ECF

---

[1] The defendants are represented by separate counsel and each defendant filed his or her own motion for summary judgment.

No. 1, ¶ 17. On June 1, 2018, defendant Dr. Cynthia Koren spoke to defendant Dr. Mark Robert Schick from Prevea Orthopedic. *Id.* ¶ 19. Dr. Schick advised Dr. Koren to place the plaintiff in a non-walking boot and give him crutches. *Id.* Dr. Schick took the plaintiff's name in order to see the plaintiff the week of June 4, 2018. *Id.*

Dr. Koren saw the plaintiff on June 6, 2018 and issued him a CAM boot (a walking boot) for his foot and Tramadol for his pain. *Id.* ¶ 22. A follow-up appointment was scheduled for June 13, 2018. *Id.* Dr. Koren allegedly spoke to Dr. Schick on June 14, 2018. *Id.* The plaintiff alleges that an MRI was scheduled "to be done ideally within 1-2 weeks." *Id.* The plaintiff says, however, that the MRI was not done until July 18, 2018, because Dr. Schick did not specify when it should be done; he says that on July 10, Dr. Koren "noted the MRI as scheduled was fine." *Id.* ¶ 23.

The plaintiff asserts that before the July 18, 2018 MRI, he wrote health services at least five request slips complaining about intense pain and the ineffectiveness of the medication he was on, asking when the MRI was going to be done, and asking what medical attention he was going to get to "fix his achilles." *Id.* ¶ 24. The plaintiff alleges that health services staff saw him the day before he had his MRI, and that he told them the Tylenol and Meloxicam helped with the headache but not with the pain in his Achilles tendon. *Id.* ¶ 25.

The plaintiff says that the MRI was done on July 18, 2018. *Id.* ¶ 26. He asserts that he wrote health services several requests asking what the MRI showed. *Id.* He also asked for a renewal of his ice bag accommodation and for pain medication, noting that he had endured pain in the Achilles for three weeks without pain medication. *Id.* The plaintiff says he felt positive that the MRI showed something wrong with his Achilles. *Id.* The plaintiff

2

was informed that "an off-site appointment was scheduled and to continue with APAP1 and meloxicam." *Id.*

The plaintiff alleges that on July 23, 2018, Dr. Koren told him that he would have a follow-up appointment with Dr. Schick in one to two weeks. *Id.* ¶ 27. On August 8, 2018, Dr. Schick recommended that the plaintiff continue to bear weight in his walking boot for two weeks, then use regular shoes with heel lifts for one month. *Id.* The plaintiff alleges that Dr. Schick told him that there would be no surgery because of the significant amount of scar tissue that had developed as a result of Green Bay's delayed response. *Id.* The plaintiff says that the MRI showed a "near complete rupture of [the plaintiff's] left achilles tendon that left a 4 cm gap between retracted ends." *Id.* He asserts that his prescription for Meloxicam was discontinued because he reiterated that it was ineffective in dealing with the pain. *Id.*

The plaintiff alleges that on August 15, 2018, he was taken out of the walking boot and given shoe wedge lifts. *Id.* ¶ 31. He says that that same day, Dr. Koren sought a second opinion. *Id.* The plaintiff explains that he was in the boot for approximately 70 days. *Id.* ¶ 32. On October 1, 2018, the plaintiff went to see defendant Dr. Eric Nelson for a second opinion. *Id.* ¶ 33. The plaintiff says that Dr. Nelson was "against surgery" because it was not his practice to operate on "inmates" with Achilles tendon ruptures and that Dr. Nelson recommended that the plaintiff continue with rehab. *Id.* ¶¶ 33, 35.

The plaintiff explains that he had a limp at the time of the second opinion and that he still has a limp in the morning hours and when he stands too long. *Id.* ¶ 36. He says he still has extreme pain in the tendon after activities and does not have the same use of his foot as he had before. *Id.*

Chief Judge Pamela Pepper screened the complaint and explained that the plaintiff's claims fall into two categories. The first category is that Health Services Unit staff (former defendants Lutsey and Blair) were deliberately indifferent to the pain the plaintiff suffered as a result of the ruptured Achilles tendon. The court did not allow the plaintiff to proceed on a claim regarding his allegations of deliberate indifference to his pain. ECF No. 10 at 8-11. The second claim category has to do with the plaintiff's belief that the delay in performing the MRI allowed scar tissue to develop, preventing a surgery that the plaintiff believes would have prevented him from having a limp and the other issues he says he continues to suffer from. *Id.* at 8. The court allowed the plaintiff to proceed on a claim against Dr. Koren and Dr. Schick based on his assertions that they knew that surgery on a ruptured achilles had to be performed within one to two weeks after the initial injury and that the "Cam Boot" was not an approved treatment for this kind of injury. *Id.* at 11-14. Thus, the court allowed the plaintiff to proceed against Dr. Koren and Dr. Schick on a claim that "their decisions in giving the plaintiff the boot, requiring an MRI, approving the timing of the MRI and scheduling the follow-up were so inadequate given the plaintiff's injury that no minimally competent professional would have responded that way under the circumstances." *Id.* at 16.

**B. Plaintiff's Inmate Complaint**

The plaintiff has been confined at Green Bay since 2008. It is undisputed that he was aware of, and utilized, the Inmate Complaint Review System at Green Bay.

The plaintiff filed inmate complaint GBCI-2018-16844, which was received by Green Bay's institution complaint examiner's office on August 7, 2018. ECF No. 54-1 at 7. The inmate complaint form instructs inmates to write "who or what is the ONE issue, of

4

Case 2:20-cv-00229-LA   Filed 12/30/21   Page 4 of 14   Document 63

this complaint" and the plaintiff wrote, "HSU should have renewed my pain meds." *Id.* The inmate complaint form also asks for the details surrounding the complaint, to which the plaintiff wrote:

> On May 30, 2018 I injured myself and needed immediate medical attention. At HSU the male nurse that examined me suspected that I had a ruptured Achilles tendon and needed to be seen by the doctor. Two days later I saw the doctor. Doctor Koren the doctor prescribed Meloxicam 7.5 mg and [ ] . The doctor also scheduled me for an off-site appointment.
>
> After taking the prescribed meds for a week I informed Doctor Koren I was still in pain. The meds did not work. Doctor Koren prescribed some effective meds for 30 days. In those 30 days I went off-site, and the Doctor ordered/recommended an MRI. While waiting for the MRI the 30 days expired. I requested to have the pain meds renewed and was denied. Instead, I was given [ ] and ordered to continue with the [ ] pills. My complaint is that I was forced for more than a month to endure the extreme pain of my injury that is serious enough that an MRI was ordered, and surgery was mentioned during my off-site visit.
>
> Once the doctor and HSU and the HSU manager learned that my injury was continuing to cause me extreme pain and the generic pain meds were ineffective they should have renewed the controlled meds.

*Id.* at 7-8.

The institution complaint examiner summarized GBCI-2018-16844 as: "Complains physician did not renew meds" and recommended dismissal of the inmate complaint. ECF No. 41-1 at 2-3. The reviewing authority dismissed GBCI-2018-16844 on August 14, 2018. *Id.* at 4.

The plaintiff states that he did not have any pre-stamped envelopes, so he tried to use a disbursement form to mail his appeal to the corrections complaint examiner's office, but Green Bay's business office staff denied him access to funds for this purpose and stated this was not allowed. Declaration of Darrius Monroe ("Monroe Decl."), ECF No. 54, ¶ 2. The Disbursement Request form contains a stamped notification that states: "Per DAI

5

Policy 309.04.01 GBCI facility procedures, Inmate shall affix the 1st 1 oz postage to all outgoing mail. Embossed envelopes available from canteen." ECF No. 54-1 at 3.

The plaintiff states that he used another inmate's envelope to mail his appeal to the corrections complaint examiner's office within the time allotted to file an appeal since he was not allowed to use his own funds, but his appeal was returned because he had sent it through another inmate's envelope. ECF No. 54, ¶ 3; ECF No. 54-1 at 4. The "CCE Return Letter" states in relevant part:

> Your appeal submission for complaint GBCI-2018-16844 was received in the CCE office in a mailing envelope belonging to another GBCI inmate. You must forward mail items to this office using your own postage and envelopes (or approved postage and envelopes provided by the institution under legal loan or other circumstances).
>
> As you know, DOC 303.40 Unauthorized Transfer of Property, prohibits the transfer of property between inmate without authorization. Please keep this in mind for any future mailings to this office. Your failure to do so might result in a conduct report for disobeying rules related to the exchange of inmate property without authorization.

ECF No. 54-1 at 4.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## III. DISCUSSION

Dr. Koren contends that the plaintiff has not filed an inmate complaint and/or appeal related to his claim against her. According to Dr. Koren, the inmate complaint the plaintiff did file, GBCI-2018-16844, is not relevant to his claim and, even if GBCI-2018-16844 is construed liberally to provide notice of some alleged complaint regarding treatment of the plaintiff's injury, he did not exhaust because he did not complete the appeal process. Similarly, Dr. Schick contends that the plaintiff has failed to exhaust his available administrative remedies because the plaintiff has filed no grievances related to the issues raised in this case, including denied or delayed medical care, request for surgery, request for other medical exams and/or tests, or a lack of proper medical treatment during his incarceration.

In response to the defendants' motions for summary judgment, the plaintiff contends that he exhausted his administrative remedies in that he substantially complied with the exhaustion requirement. The plaintiff points out that he did not know he was being provided with the wrong medical treatment until around the time he filed his inmate complaint. He says that he did include this information in his appeal but that he was hindered from submitting his appeal. According to the plaintiff, after his appeal was sent back to him for using another inmate's envelope, he could not have timely submitted an appeal to the corrections complaint examiner "[e]ven assuming that Monroe would have gotten legal loan, by the time that was approved through the GBCI's channels Monroe's ten (10) days' time lines would have expired, and seeking to request that the CCE review his Appeal based on other circumstances and excuse his untimely appeal, well, that's like asking the CCE to release Monroe from prison. NOT A CHANCE THAT would have

7

happened." ECF No. 52 at 4. The plaintiff states that he did everything he could, considering what he was aware of, to exhaust his administrative remedies. He states that he did not know he would have to raise issues in his inmate complaint that did not yet exist, for example, he did not know he was being provided with the wrong medical treatment when he filed GBCI-2018-16844. Monroe Decl., ¶ 4. The plaintiff also states that he did not know that every issue in his civil complaint needed to be addressed in the initial inmate complaint "because the violations perceived would not have been completed in its entirely when the complaint was filed" and he "was under the impression that this was sufficient enough because compliant here at GBCI only allow for one issue to be raised." *Id.* The plaintiff states that he did not file any other inmate complaints because he assumed "that addressing the conditions of [his] medical issue was sufficient enough and that [he] was only allowed to address one issue as it relates to the complaint process[.]" *Id.* ¶ 7.

The Prison Litigation Reform Act (PLRA) provides that an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an inmate comply with the rules applicable to the grievance process at the inmate's institution. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The objective of § 1997e(a) is to permit the institution's "administrative process to run its course before

8

litigation begins." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (quoting *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005)); *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects inmates to adhere to "the specific procedures and deadlines" established by the institution's policy. *Dole*, 438 F.3d at 809; *see also Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted).

Under the Wisconsin Department of Corrections ("DOC") Inmate Complaint Review System ("ICRS"), "[b]efore an inmate may commence a civil action . . ., the inmate shall exhaust all administrative remedies the department has promulgated by rule." Wis. Admin. Code § DOC 310.05. "An inmate may use the ICRS to raise issues regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code § DOC 310.06(1).

To fully exhaust administrative remedies in Wisconsin, the inmate must file a complaint with the institution complaint examiner within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2). A late complaint may be accepted for good cause. *Id.* An inmate may file only one complaint per week unless it involves "the inmate's health and personal safety" or is made under the Prison Rape Elimination Act. Wis. Admin. Code § DOC 310.07(7). Each complaint may contain "only one clearly identified issue." Wis. Admin. Code § DOC 310.07(5). The institution complaint examiner shall accept the complaint, return it, or reject it. Wis. Admin. Code § DOC 310.10(2). When a complaint is accepted, the institution complaint examiner sends a recommendation to the appropriate reviewing authority to affirm or dismiss the

9

complaint. Wis. Admin. Code § DOC 310.10(9), (12). The reviewing authority shall affirm or dismiss the complaint in whole or in part. Wis. Admin. Code § DOC 310.11(2).

An inmate may appeal the reviewing authority decision within fourteen days after the date of decision. Wis. Admin. Code § DOC 310.12(1). An appeal filed later than fourteen days after the date of the reviewing authority decision may be accepted for good cause. Wis. Admin. Code § DOC 310.12(6). The corrections complaint examiner will only address issues raised in the original complaint. Wis. Admin. Code § DOC 310.12(3). The corrections complaint examiner may accept, return, or recommend rejection of an appeal or complaint. Wis. Admin. Code § DOC 310.12(2). For all accepted appeals, the corrections complaint examiner shall recommend that the reviewing authority decision be affirmed or dismissed and send its recommendation to the secretary of the DOC. Wis. Admin. Code § DOC 310.10(9). The secretary shall affirm or dismiss the correction complaint examiner's recommendation or return the appeal for further investigation. Wis. Admin. Code § DOC 310.13(2). The secretary's decision is final. Wis. Admin. Code § DOC 310.13(3).

The plaintiff's claim concerns prison conditions and, therefore, the plaintiff was required to exhaust available administrative remedies under the ICRS. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004); *see also Richmond v. Sauvey*, No. 18-cv-530-JPS, 2018 WL 4100537, *5, *8 (E.D. Wis. Aug. 28, 2018) (granting defendants' motion for summary judgment on exhaustion grounds as to private doctor who performed work off-site).

The plaintiff's inmate complaint GBCI-2018-16844 did not exhaust his claims against the defendants. As explained in the Screening Order, the plaintiff's allegations

regarding the failure to give him adequate pain medications (the plaintiff was not allowed to proceed on a claim based on these allegations) are distinct from his claim against Dr. Koren and Dr. Schick. The plaintiff's claim upon which he is proceeding in this case – the defendants' treatment decisions including giving him a boot and delaying his MRI so long that he was unable to have surgery – was not raised in his inmate complaint and was not addressed by the institution complaint examiner or reviewing authority. At the time the plaintiff filed his inmate complaint, he had not yet received the results of his MRI, so he would not have known about the impact of the delay in the MRI. The plaintiff's failure to file an inmate complaint raising this issue means that he did not exhaust administrative remedies as to his claim against the defendants.

The plaintiff says he assumed that addressing the issue relating to his pain medication in his inmate complaint was sufficient because he was only allowed to address one issue per compliant. He states that he was not aware that he would have to raise issues that did not yet exist and that, when he filed his inmate compliant, he did not yet know that he would not receive surgery. The plaintiff goes on to state that he did raise this issue (along with the pain medication issue) in his appeal to the corrections complaint examiner. Administrative remedies are only available if a prisoner has been notified of their existence. *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (citations omitted). Here, it is undisputed that the plaintiff has been confined at Green Bay since 2008 and that he was aware of and utilized the ICRS there. This fact, together with the plaintiff's assertions in his summary judgment response materials, demonstrate his knowledge of the ICRS. In any event, the inmate complaint form instructions clearly direct inmates to state the one issue of their inmate complaint. It logically follows any issues not raised in

11

the inmate complaint must be raised in a separate inmate complaint. Raising a new issue in the appeal to the corrections complaint examiner is insufficient. See Wis. Admin. Code § DOC 310.12(3) (The corrections complaint examiner will only address issues raised in the original complaint.). The plaintiff has not filed any inmate complaint raising the issue of the defendants' treatment decisions and, therefore, he did not exhaust his administrative remedies.

Even if GBCI-2018-16844 is interpreted as having raised the issue of the defendants' treatment decisions, the plaintiff did not exhaust because he did not complete the appeal process. According to the plaintiff, he was prevented from mailing his appeal to the corrections complaint examiner because he had to use another inmate's envelope which was not allowed. He also states that after his appeal was returned, he would not have had time to get a legal loan to mail his appeal and that an untimely appeal would not have been accepted. However, under Wis. Admin. Code § DOC 310.12(6), an untimely appeal may be accepted for good cause and the plaintiff was therefore required to try; futility is no excuse. *See Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 536-37 (7th Cir. 1999); *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006) (citing *Booth v. Churner*, 532 U.S. 731 (2001)). Moreover, the record does not support the plaintiff's contention that he was prevented from mailing his appeal. Rather, he initially tried to use a disbursement form to mail his appeal to the correction complaint examiner's office, but his request was denied, and he was directed to affix postage and that envelopes were available from canteen. Instead of following these instructions, the plaintiff used another inmate's envelope to mail his appeal, which was returned along with information to "forward mail items to this office using your own postage and envelopes (or approved

12

postage and envelopes provided by the institution under legal loan or other circumstances)." The plaintiff did not follow these directions. He has failed to exhaust his administrative remedies. *See Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005) (inmate did not exhaust who did not follow instructions for rectifying mistake after original compliant returned).

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the defendant Dr. Koren's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 38) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Dr. Schick's motion for summary judgment for failure to exhaust administrative remedies (ECF No. 42) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Federal Rules of Appellate Procedure 3 & 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within 28 days of the entry of judgment. Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The

court cannot extend either of these deadlines. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 30th day of December, 2021.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge